IN THE IOWA DISTRICT COURT FOR LINN COUNTY

| | |
|---|---|
| MICHELLE OLSON,<br><br>    Plaintiff,<br><br>v.<br><br>MADISON NATIONAL LIFE, a HORACE MANN COMPANY, and NATIONAL INSURANCE SERVICES OF WISCONSIN, INC.<br><br>    Defendants. | Case No. _____<br><br><br><br>**PETITION AND JURY DEMAND** |

COMES NOW the Plaintiff, Michelle Olson, and for her cause of action against the Defendants, and respectfully states as follows:

**INTRODUCTION**

1. This is an action by Plaintiff, Michelle Olson against the Defendants, The Michelle Olson for breach of contract.

2. At all times pertinent herein the Plaintiff, Michelle Olson (hereinafter referred to as "Michelle" or "Plaintiff"), is and was an individual and resident of the State of Iowa.

3. At all times pertinent herein the Defendant, Madison National Life, a Horace Mann Company, (hereinafter referred to as "Madison"), is an insurance company, principal place of business in Wisconsin, and is and has been licensed to do business and doing business in Linn County, Iowa.

4. At all times pertinent hereto, the Defendant National Insurance Services of Wisconsin, Inc. ("NIS") was the administrator of the group insurance policy of School Insurance Fund Trust, for which Plaintiff was a participant or beneficiary, and whose primary place of business was in Wisconsin, and is and was licensed to do business in the State of Iowa.

5. At all times pertinent herein the Defendant

6. The actions complained of herein took place in Linn, Iowa.

7. The amount in controversy meets or exceeds the jurisdictional amount to be this court.

8. Venue is proper in the Iowa District Court for Linn County.

## FACTUAL BACKGROUND

9. Plaintiff restates paragraphs 1-8 and 58-96 as if stated herein.

10. As a benefit of her Employment with Cedar Rapids Community School District, Plaintiff was covered by a Long-Term Disability (LTD) insurance policy with Madison National Life.

11. The Plaintiff and Defendant Madison National entered into a contractual agreement wherein the Defendant provided the Plaintiff with long term disability insurance benefits.

12. In the alternative, the Defendant Madison National entered into a contractual agreement with the Trust, who provided insurance to the Plaintiff through the long term disability plan, administered by NIS.

13. Specifically, the insurance contract provides for long term income protection from Madison National Life if Michelle was to become disabled while employed.

14. Michelle applied for Social Security Disability March of 2021.

15. Social Security Disability determined she was disabled as of September 26, 2020.

16. On or around September 26, 2020, Michelle became disabled and as of March, 2021, she became qualified for benefits.

17. In March of 2021, Ms. Olson applied for LTD benefits with Madison National Life.

18. In April of 2021, Madison National requested an updated authorization from Michelle to receive the medical records from Dr. Bader.

19. On or around May 19, 2021, Madison National Life informed Ms. Olson that an outside medical consultant, MLS was to review her claim.

20. On June 15, 2021, Madison National Life informed Ms. Olson that she had not provided sufficient proof of her disability and her LTD benefits were denied.

21. Madison National Life received Michelle's appeal for denial of benefits in August of 2021.

22. On or around October 11, 2021, Madison National Life provided notice to Michelle that an extension of 30 days was needed for her appeal, to review her claim.

23. On or around November 12, 2021, Madison National again denied Ms. Olson the benefits of which she was qualified for.

24. January of 2022, Michelle requested an extension from Madison National for her second appeal of her long-term disability benefits.

25. In February of 2022, Plaintiff's attorney received an approval for an extension of Ms. Olson's second denial of benefits from Madison National Life.

26. On or around May of 2022, an additional extension was requested and granted as Ms. Olson was in process of providing additional records to Madison National Life.

27. On or around October 14, 2022, Michelle's second appeal was submitted to Madison National Life.

28. On or around April 25, 2023, Madison stated they completed their additional review of Michelle's claim and upheld their denial of her claim.

29. Plaintiff appealed the decision in August 2021, and October 14, 2022, wherein Plaintiff provided detailed explanation of mental and physical disability with extensive medical records, statements from treating physicians and others.

30. On or around August 2021, and October 14, 2022, Plaintiff provided additional information to be considered.

31. On or around April 25, 2023, the final decision was entered and Plaintiff was denied her long-term disability benefits.

32. Per the terms provided by Madison National Life in their final denial of Ms. Olson's claim, Definition of Disability, "Disability or Disabled means that during the Elimination Period and your Own Occupation Period you are, as a result of Physical Disease, Injury, Mental Disorder, Substance Abuse or Pregnancy, unable to perform one or more of the Material Duties of your Own Occupation, and, due to such inability, your Work Earnings are less than 80% of your Predisability Earnings, and you are incapable of earning 80% or more of your Predisability Earnings." Ms. Olson met this factor, she sought treatment on September 29, 2020, and in October she went on leave due to the pain she still suffered, by December 2020, her pain was worse she followed up with her provider.

33. By March 2021, it was determined Michelle should apply for LTD as she remained unable to work.

34. Per the terms provided by Madison National Life in their denial of Ms. Olson's claim, defining Responsibilities of Disabled Insured Persons, Ms. Olson made good faith efforts to recover from, or reduce the severity of her disability.

35. Per the terms provided by Madison National Life in their denial of Ms. Olson's claim, defining Responsibilities of Disabled Insured Persons, Ms. Olson was unable to perform at

4

home work which was she was on, and there was no longer a position she could do that would allow her to work as she sought treatment and followed the treatment plans providers set her on.

36.   Ms. Olson arranged for regular care of a physician and pursued "any reasonable medical procedure or treatment that would likely improve your condition or end your Disability, and that does not pose unreasonable risks."

37.   Ms. Olson submitted evidence from her providers that substantiated her disability. Ms. Olson also went for rehabilitation and/or treatment with physical therapy.

38.   Ms. Olson appealed in good faith in her pursuit of LTD benefits.

39.   Ms. Olson provided documentation from medical providers each time she applied for and appealed the denials with Madison National Life benefits for long term disability.

40.   In its appeal decision, Madison also cited from Dr. DeLeeuw's MLS review, stating the "medical information does not support does not support restrictions that would impair you from performing the duties of your own occupation". Dr. DeLeeuw failed to speak with any of Ms. Olson's providers.

41.   Ms. Olson provided documentation from Nicole Woolley DNP.

42.   The Defendants claim that Plaintiff did not meet the requirements of the policy.

43.   The Defendants did not give Plaintiff the ability to review or respond to the opinions of the Dr. DeLeeuw.

44.   The Defendants gave no documentation nor confirmation by Cedar Rapids Community School District or any medical provider that Plaintiff could return to work.

45.   Despite Nicole Wolley, DNP stating that Plaintiff could not work in a separate report, the Defendants still stated that Plaintiff is not eligible for benefits.

46. Madison's RRS analysis stated their disagreement with the previous medical review, which recommended restrictions for back pain. "I disagree with this assessment, as the claimant had normal physical function throughout the period under review. The previous review recommended restrictions based solely on the self-reported symptoms, and not on objective evidence." This in and of itself contradicts the fact that Ms. Olson was in pain, sought treatment and resolution for months with multiple visits to medical providers, despite RRS stating "there were no inconsistencies found within the available information."

47. Dr. DeLeeuw indicates no current documentation supports a functional impairment in cognitive and neuropsychological areas and yet does not discuss testing and documents by medical providers stating Ms. Olson has been dealing with depression for some time.

48. This was a misstatement by Dr. DeLeeuw.

49. Defendants used these opinions to deny Plaintiff's policyholder's benefits.

50. This decision was improper and Defendants knew it was improper.

51. Defendants made other decisions to deny Plaintiff's policyholder benefits that were improper.

52. Plaintiff exhausted all of her administrative remedies.

53. This suit is timely filed within the terms of the policy.

54. Due to the denial of her long-term disability benefit coverage, Plaintiff's financial and mental condition worsened.

55. The Plaintiff met all her obligations under the terms of the insurance policy.

56. The Defendants did not meet their obligations under the contract and policy.

57. The Defendants had no reasonable basis under the terms of the policy to deny Plaintiff her benefits and it caused Plaintiff additional damages.

6

## COUNT I - BREACH OF CONTRACT

58. Plaintiff restates paragraphs 1-57 and 65-96 as if stated herein.

59. The parties entered into an agreement for insurance.

60. The Plaintiff met her obligations under this agreement.

61. The Defendants gave improper reasons and did not adhere to the obligations of the contract.

62. The Defendants then did not meet their obligations under the contract.

63. The Defendants breached the contract in such ways as the evidence may demonstrate.

64. The Defendants' breach was the proximate cause of damages to the Plaintiff.

WHEREFORE the Plaintiff, Michelle Olson, prays the Court grant her appropriate compensatory damages and consequential damages, courts costs and such further relief as the Court may deem appropriate.

## COUNT II - BAD FAITH

65. Plaintiff restates paragraphs 1-64 and 75-96 as if stated herein.

66. During the time of the long term care policy involved herein, Madison National billed and received substantial premiums and payments which were timely paid to create a contract.

67. Ms. Olson's claim of benefits was not reasonably debatable

68. Madison National lacked a reasonable basis for its denial of benefits to Ms. Olson.

69. Madison National knew or should have known that it lacked a reasonable basis for the denial of benefits to Ms. Olson

70. The actions and conduct of Madison National relating to the investigation and denial of Ms. Olson's claim for long term care insurance was in breach of the duty of good faith.

71. The actions and conduct of Madison national relating to the denial of the appeal of Ms. Olson for benefits was in breach of the duty of good faith

72. Madison National acted in reckless disregard of Ms. Olson's rights

73. Madison National acted maliciously and/or with a willful and wanton disregard for Ms. Olson's rights and Madison National's conduct was sufficient to entitle Ms. Olson to recover punitive or exemplary damages.

74. As a result of the conduct of Madison National, the Plaintiff is entitled to compensation for damages beyond the written terms of the Policy, including, but not limited to, emotional damages, attorney fees and expenses in the claim and litigation, consequential damages, punitive damages and other such relief as is shown by the evidence.

WHEREFORE, the Plaintiff, Michelle Olson, prays for judgment against Defendant Madison National Life for compensatory and punitive damages in an amount as determined at trial, attorney's fees as provided by law, interest at the lawful rate, and the costs of this action incurred herein and for such and further relief as is just and proper in the circumstances.

### COUNT III – INTENTIONAL INTERFERENCE WITH A CONTRACT

75. Plaintiff restates paragraphs 1-74 as if stated herein.

76. During the time of the long term care policy involved herein, Madison National billed and received substantial premiums and payments which were timely paid to create a contract.

77. NIS helped administered the contract, such that they may have had the ability to make policy decisions on the long term disability policy.

78. Plaintiff and/or the Trust satisfied all obligations under the policy contract.

79. Plaintiff Michelle Olson was denied her long-term disability benefits.

80. Defendant NIS knew of that contract policy;

81. Defendant NIS intentionally and improperly, and tortiously interfered with the contract policy.

82. The tortious interference by Defendant NIS caused Plaintiff Michelle Olson to not receive her benefits.

83. Plaintiff Michelle Olson was damaged by this interference conduct of NIS.

84. Defendant NIS intentionally and tortiously interfered with Plaintiff's prospective economic advantage with Madison National Life.

85. Defendant NIS induced or otherwise caused Madison National Life not to continue the prospective relation with Plaintiff Michelle Olson

86. Defendant NIS prevented Plaintiff Olson from continuing with the prospective relation.

87. The aforementioned actions by Defendant NIS constitute an infringement on the economic advantage and opportunities of Plaintiff Michelle Olson.

88. As a proximate result of the aforesaid, Ms. Riesberg sustained damages.

89. Plaintiff Michelle Olson has incurred losses as a proximate result of the wrongful conduct and her loss of the contract policy benefits and loss of prospective business advantage including:

   a. Past lost benefits;

    b.    Future loss of future benefits;

    c.    Past pain and suffering;

    d.    Future pain and suffering;

    e.    The incurring of costs and expenses in the claim and litigation;

    f.    The incurring of emotional distress; and

    g.    Such other damages as shown by the evidence.

90. As a result of the conduct of Defendant NIS, the Plaintiff Michelle Olson, is entitled to the damages of loss of benefits and loss of prospective economic advantage.

91. Defendant NIS, acted with a predominantly improper purpose.

92. The conduct of Defendant NIS was legally outrageous

93. The conduct of Defendant NIS was not fair and reasonable under the circumstances, nor was it done for a legitimate purpose.

94. Defendant NIS did not have the right or duty to act under these circumstances and it was their conduct was improper.

95. Defendant NIS exceeded the scope of any administration contract for Defendant Madison National or the Trust or the Plaintiff.

96. The conduct of the Defendants aforesaid was of such a willful, wanton, and reckless disregard to Plaintiff's rights and of such reckless nature such as to entitle Plaintiff to the award of punitive damages.

WHEREFORE Plaintiff Kayla Jean Riesberg prays for judgment against Defendants for such sums as the jury determines will fully, fairly and adequately compensate the Plaintiff for damages and injuries, for such punitive damages as is proper, for interest on this judgment in the

maximum amount provided by for law, and for the costs of this action and further relief as is just and proper in the circumstances.

Respectfully Submitted,

By:     */s/John Q. Stoltze*
         John Q. Stoltze (AT0013285)
         Stoltze Law Group, PLC
         300 Walnut, Ste. 260
         Des Moines, Iowa 50309
         Telephone: 515.989.8529
         Facsimile: 515.989.8530
         E-mail: john.stoltze@stoltze.law
         ATTORNEY FOR PLAINTIFF

**ORIGINAL FILED VIA EDMS**

## JURY DEMAND

COMES NOW the Plaintiff, Michelle Olson, and requests a trial by jury for all causes of action that may be appropriately submitted to a jury.

Respectfully Submitted,

By:    */s/John Q. Stoltze*
      John Q. Stoltze   (AT0013285)
      Stoltze & Stoltze, PLC
      300 Walnut, Ste. 260
      Des Moines, Iowa 50309
      Telephone: 515.244.1473
      Facsimile: 515.244.3930
      E-mail: bruce.stoltze@stoltzelaw.com
      E-mail: john.stoltze@stoltzelaw.com
      ATTORNEYS FOR PLAINTIFF